IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**UNITED STATES OF AMERICA**

-vs-                                                                            **CAUSE NO.  A-10-CR-224-SS**

**MIGUEL GUEVARA (1)**
_____

**O R D E R**

BE IT REMEMBERED on May 26, 2010 the Court held a hearing in the above-styled cause, and the parties appeared in person and through counsel.  Before the Court were Defendant Miguel Guevara's Motion to Suppress [#44], and the Government's response [#46] thereto.  Having considered the motion and response, the case file as a whole, the relevant law, and the arguments of counsel at the hearing, the Court enters the following.

**Background**

**I.      General Background**

Defendant Miguel Guevara ("Defendant") was indicted on April 6, 2010 for possession of a stolen firearm in violation of 18 U.S.C. § 922(j).  Indict. [#15].  Defendant filed the present motion to suppress on May 7, 2010.  In the motion, he argues the evidence obtained pursuant to a search of his vehicle on February 24, 2010 should be suppressed.  At the hearing, the Court indicated the motion to suppress would be DENIED, and that oral ruling is confirmed and explained herein.

**II.     Testimony at the hearing**

At the hearing on this matter, the defense called two witnesses: Officers Brandon Sheffy and Ben Hornbuckle.  Both officers were present on February 24, 2010 when Defendant's vehicle was

searched, and their testimony was undisputed concerning the events of that day. Officer Sheffy testified on February 24, 2010 he and other Austin Police Department officers were executing a property search warrant at Computers Plus, a business then under investigation for buying stolen goods. Both officers testified they had been briefed before executing the warrant, and were told by detectives Computers Plus was suspected of taking in stolen electronics. The officers were told the store was still actively taking in the stolen electronics, and thus they should park their vehicles behind the store during the execution of the search warrant so that the store would remain open and they could observe and document the customers who entered. Officer Hornbuckle testified they were told to look specifically for juveniles and young adults, possibly with gang affiliations, as many of the people who were believed to be "fencing" stolen goods at Computers Plus had been identified as gang members. Officer Hornbuckle testified he knew from experience that oversized baggy clothing—generally in one color, such as red—was a sign of gang affiliation.

On the day in question there were 8 to 12 officers in Computers Plus executing the search warrant, some in the front and some in the back taking an inventory of property. The officers were asking the name and date of birth of each person who entered the store in order to run a warrant check on the person. Defendant approached the door to the store, along with a juvenile male companion, and was "waved in" by Officer Hornbuckle. Officer Hornbuckle testified Defendant was wearing red oversized clothing at the time, which he considered consistent with gang membership. Furthermore, Officer Sheffy testified he recognized Defendant from another occasion when he had been conducting surveillance at Computers Plus, and he had seen Defendant enter and exit with the store with a laptop. He had been instructed to follow Defendant and pull him over in order to ascertain his identity. He had done so, and remembered Defendant from that occasion.

Officer Hornbuckle proceeded to ask Defendant his name and date of birth, which Defendant gave voluntarily (although he had no identification). The officers conducted a warrant check and determined Defendant had no outstanding warrants, but both he and his companion had a "history" of gang-related burglaries. At this time, only Officers Sheffy and Hornbuckle were in close proximity to Defendant. The officers asked Defendant whether he had any stolen items in his vehicle and he answered in the negative. They asked for consent to search his vehicle and Defendant acquiesced. He signed a written consent form, which stated he had been fully advised of his rights and understood he had the right to refuse the search and could withdraw his consent at any time.[1] *See* Def.'s Ex. 1 (consent form).

Officers Sheffy and Hornbuckle searched Defendant's vehicle and found a non-functioning cell phone, a functioning Ipod Touch, and a digital camera, which was turned off. When he turned on the camera, Officer Sheffy saw there were pictures of people rock climbing, but no pictures of the Defendant. His suspicions aroused, he passed the camera to Officer Hornbuckle, who is a rock-climber, in the hope he might recognize someone in the pictures. Officer Hornbuckle in fact recognized several of the people in the photographs, including various friends of his and even his wife. He called his wife and other friends who were in the pictures, and ascertained the camera belonged to Ellen Alger. When he called Alger, she returned to her home and discovered it had indeed been burglarized, and her digital camera stolen.[2] It was later confirmed the digital camera in Defendant's car was her stolen camera.

---

[1]The officers testified that at this time Defendant was surrounded by no more than two officers, and was never handcuffed or physically restrained. They testified they would not have conducted the search without his consent.

[2]Two other homes in the immediate vicinity of Alger's had also been burglarized, and a number of firearms stolen. The firearms were later found in Defendant's residence.

**Issues Presented**

Defendant raises two issues in the motion to suppress. First, he claims his consent to search the vehicle was not free and voluntary because the officers detained him without probable cause. *See* Def.'s Mot. Suppress [#44] at 1. Secondly, Defendant argues even if his consent was voluntary, turning on the camera and viewing the pictures exceeded the scope of that consent. *Id.* at 2.

**Analysis**

**I.    Validity of Consent**

Where a defendant consents to a search, the touchstone for the validity of that consent is whether it was "free and voluntary." *United States v. Shabazz*, 993 F.2d 431, 438 (5th Cir. 1993). The government has the burden of proving the consent was voluntary by a preponderance of the evidence. *Id.* In evaluating the voluntariness of consent, the Fifth Circuit traditionally looks to six factors:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*Id.* Defendant argues he was detained improperly, without probable cause, and therefore his consent was not truly voluntary. The Court disagrees.

The Fourth Amendment of the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST., AMEND. IV. But law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. *United States v. Drayton*, 536 U.S. 194, 200 (2002) (citing *Florida v. Royer*, 460 U.S. 491, 497 (1983)). Thus, even when law

enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search—"provided they do not induce cooperation by coercive means." *Id.* at 201. "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." *Id.* This type of encounter, which does not implicate Fourth Amendment concerns, is generally referred to as a "consensual encounter." *United States v. Cavitt*, 550 F.3d 430, 438 (5th Cir. 2008).

The encounter in the present case was very clearly a consensual encounter. Defendant was simply being questioned, exactly as every other person who entered the store was being questioned. It is undisputed he provided his name and birth date voluntarily to the officers. He did not give them any form of identification which they might have retained in order to delay his departure. There is no evidence indicating the officers told him he could not depart, or threatened, confined, or restrained him in any way.[3] He was in the public area of the store during the entirety of the encounter, and was being questioned by no more than two officers. Therefore, the Court finds his custodial status was wholly voluntary, and thus the first factor weighs in favor of finding voluntary consent.

The remainder of the relevant factors also weigh in favor of finding voluntary consent: there is no evidence any "coercive police procedures" were used to obtain the consent, Defendant appears to have cooperated with the officers fully and without hesitation, and Defendant was clearly aware of his right to refuse consent (and to withdraw it), as this was specifically stated on the consent form he signed.[4]

---

[3]Although Officer Sheffy testified Defendant was not free to leave at the moment he came in the store, this was consistent with the fact the officers intended to take his name and date of birth, as they had every other customer who entered. Neither of the officers testified he was not free to leave once he had given his name and date of birth for their records.

[4]Because there was no evidence presented on the remaining factors—the defendant's education and intelligence and the defendant's belief that no incriminating evidence would be found—the Court finds they do not

Based on all the foregoing, the Court finds Defendant voluntarily submitted to the questioning of the officers, and that his consent—which was given voluntarily during the consensual encounter—was therefore constitutionally valid.

## II.  Scope of Consent

Defendant also argues the search, even if based on voluntary consent, exceeded the scope of that consent.  It is true that when conducting a warrantless search of a vehicle based on consent, officers have "no more authority [to search] than they have apparently been given by the consent." *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 666-67 (5th Cir. 2003) (citations omitted).  The scope of consent is determined by objective reasonableness—what a reasonable person would have understood from the exchange between the officer and searched party—and not the subjective intent of the parties.  *Id.* at 667 (citing *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).

In the present case, the officers questioned Defendant about whether he had stolen items in his vehicle.  He responded he did not.  He then filled out a form giving the officers general permission to search his vehicle, without any limitations.  He was specifically informed he had the right to withdraw his consent at any time; however, it is undisputed he never withdrew his consent during the search.  Defendant argues the officers exceeded the scope of his consent when they turned on the digital camera.  However, given that the officers were searching for stolen goods (and specifically electronics), it is entirely natural they would closely inspect any electronics in the car, and attempt to ascertain whether they belonged to Defendant or anyone else.  It is well-settled if a defendant chooses not to place any explicit limitations in his response to an officer's general request to search, this is considered evidence of general consent to search.  *Id.* (citing *United States v. Crain*, 33 F.3d 480, 484

---

weigh in either direction.

(5th Cir. 1994)).  For instance, law enforcement officials are not required to separately request permission to search each container within a vehicle for which they have received consent to search. *Id.* (citing *Jimeno*, 500 U.S. at 252).  The Fifth Circuit has repeatedly stated "the defendant, as the individual knowing the contents of the vehicle, has the responsibility to limit the scope of the consent." *Id.* (quoting *United States v. McSween*, 53 F.3d 684, 688 (5th Cir. 1995).  By assuring the officers there were no stolen goods in the car, Defendant granted consent without giving the officers any basis to think he was asserting an expectation of privacy in any of the goods in the vehicle.  Because the officers did exactly what they had obtained consent to do—conduct a general search of the car for stolen electronics—the Court finds they did not exceed the scope of Defendant's consent in this case.

**III.    Standing**

Finally, the Government argues even if the officers did exceed the scope of consent (which they did not), Defendant has no standing to challenge a search of the camera under the Fourth Amendment because it was stolen.  The Court agrees.  Since the decision in *Katz v. United States*, 389 U.S. 347 (1967), it has been the law that "capacity to claim the protection of the Fourth Amendment depends...upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).  A subjective expectation of privacy is legitimate if it is "one that society is prepared to recognize as 'reasonable.'" *Id.* at 143-144 n. 12 (quoting *Katz*, 389 U.S. at 361)).  The defendant bears the burden of establishing such an expectation by a preponderance of the evidence. *United States v. Vega*, 221 F.3d 789, 795 (5th Cir. 2000).

The Fifth Circuit, along with other courts, has held (albeit in the slightly different context of electronic monitoring) a defendant cannot demonstrate a "legitimate expectation of privacy" such as is required to invoke the Fourth Amendment where the property in question is contraband or stolen

goods, because persons can have no legitimate expectation of privacy in articles of this nature, which they have no right to possess. *See, e.g., United States v. Pringle*, 576 F.2d 1114, 1119 (5th Cir.1978) (holding "possessors of [contraband] have no legitimate expectation of privacy in substances which they have no right to possess at all." ); *United States v. Moore*, 562 F.2d 106 (1st Cir. 1977) (same). Likewise, it is well-settled a defendant has no legitimate expectation of privacy in a stolen vehicle, and thus has no standing to contest a warrantless search of the vehicle. *United States v. Hensel*, 672 F.2d 578 (6th Cir. 1981); *United States v. Hargrove*, 647 F.2d 411 (4th Cir. 1981). This reasoning is sound, and applies with equal force to the case at hand. Defendant cannot assert any legitimate expectation of privacy in a digital camera, which was stolen property and which he therefore had no right to possess. Thus, Defendant has no standing to object to the officers' search of the camera's contents, even if it did exceed the scope of his consent.

## Conclusion

In accordance with the foregoing,

IT IS ORDERED that Defendant Miguel Guevara's Motion to Suppress [#44] is DENIED in its entirety.

SIGNED this the 27th day of May 2010.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE